Daniel J. Guyder
Joseph Badtke-Berkow
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone:     (212) 610-6300
Facsimile:     (212) 610-6399

*Counsel to Neil Gilchrist, as the Foreign Representative of
KCA Deutag UK Finance plc*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| KCA DEUTAG UK FINANCE PLC,[1] | Case No. 20-_____ (___) |
| Debtor in a Foreign Proceeding. | |

**MEMORANDUM OF LAW IN SUPPORT OF VERIFIED PETITION FOR
RECOGNITION OF FOREIGN PROCEEDING AND
MOTION FOR ANCILLARY RELIEF**

---

[1]    The last four digits of KCAD's UK company identifier are 5065.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 2

JURISDICTION AND VENUE ........................................................................... 3

BACKGROUND ................................................................................................. 3

ARGUMENT ...................................................................................................... 4

    A.    KCAD Meets the General Eligibility Requirements of Section 109(a) ................... 4

    B.    The English Proceeding is Entitled to Recognition as  a Foreign Main
        Proceeding or, in the Alternative, as a Foreign Nonmain Proceeding ..................... 5

        i.    The English Proceeding is a "Foreign Proceeding" ........................... 6

        ii.    The English Proceeding is a Foreign Main Proceeding .................................. 9

        iii.    In the Alternative, the English Proceeding is a Foreign Nonmain
             Proceeding ............................................................................. 11

        iv.    This Case Was Commenced by KCAD's authorized "Foreign
             Representative" ........................................................................ 13

        v.    This Case Was Properly Commenced under Chapter 15 of the
             Bankruptcy Code ...................................................................... 14

    C.    Recognition and Enforcement of the Sanction Order and the Scheme in the
        United States Pursuant to Section 1521 of the Bankruptcy Code Is Proper ............ 16

        i.    Just Treatment of All Holders of Claims Against or Interests in the
             Debtor's Property ..................................................................... 18

        ii.    Protection of Claim Holders in the United States Against Prejudice and
             Inconvenience in the Processing of Claims in the Foreign Proceeding ......... 20

        iii.    Distribution of Proceeds Substantially in Accordance with the
             Bankruptcy Code ...................................................................... 20

        iv.    The General Balancing Test Weighs in Favor of Granting Relief ................ 21

    D.    Enforcement of the Scheme Is Also Proper under Section 1507 ........................... 23

    E.    Injunctive Relief is Appropriate ....................................................................... 25

    F.    Enforcement of the Sanction Order and the Scheme is Consistent with
        Principles of Comity ...................................................................................... 28

    G.    The Relief Requested by the Chapter 15 Petition Is Consistent with United
        States Public Policy and Policy Behind the Bankruptcy Code .............................. 34

    H.    This Court Should Close Immediately Close the Chapter 15 Case Following
        Its Entry of an Order Granting Recognition of the English Proceeding and
        Enforcing the Sanction Order and Scheme in the United States ............................ 37

CONCLUSION ................................................................................................... 39

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ad Hoc. Grp. of Vitro Noteholders v. Vitro, S.A.B. de C.V. (In re Vitro, S.A.B. de C.V.)*, 470 B.R. 408 (N.D. Tex. 2012), *aff'd*, 701 F.3d 1031 (5th Cir. 2012), *cert. dismissed*, 569 U.S. 944 (2013) ..................................................................................14

*In re Agrokor d.d.*,
591 B.R. 163 (Bankr. S.D.N.Y. 2018).......................................................................24, 28, 32

*In re AJW Offshore, Ltd.*,
488 B.R. 551 (Bankr. E.D.N.Y. 2013)...................................................................................17

*In re Arctic Glacier Int'l, Inc.*,
901 F.3d 162 (3d Cir. 2018)...................................................................................................33

*In re Artimm, S.r.L.*,
335 B.R. 149 (Bankr. C.D. Cal. 2005)...................................................................................17

*In re Atlas Shipping A/S*,
404 B.R. 726 (Bankr. S.D.N.Y. 2009).......................................................................... *passim*

*In re Avanti Commc'ns Grp. Plc*,
582 B.R. 603 (Bankr. S.D.N.Y. 2018).......................................................................... *passim*

*In re B. Endeavour Shipping Co. Ltd.*,
Case No. 15-10246 (REG) (Bankr. S.D.N.Y. Mar. 10, 2015)..................................................9

*In re Bd. of Dirs. of Hopewell Int'l Ins., Ltd.*,
238 B.R. 25 (Bankr. S.D.N.Y. 1999)......................................................................27, 29, 32

*In re Bd. of Dirs. of Hopewell Int'l Ins., Ltd. (Digicel Grp. One)*,
No. 20-11207 (Bankr. S.D.N.Y. June, 17, 2020)...................................................................27

*In re Bd. of Dirs. of Telecom Arg., S.A.*,
528 F.3d 162 (2d Cir. 2008)...................................................................................................30

*In re Bd. of Dirs. of Telecom Arg. S.A.*,
No. 05-17811 (BRL), 2006 WL 686867 (Bankr. S.D.N.Y. Feb. 24, 2006) ...........................24

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
389 B.R. 325 (S.D.N.Y. 2008)...............................................................................................23

*In re Berau Cap. Res. Pte Ltd.*,
540 B.R. 80 (Bankr. S.D.N.Y. 2015).......................................................................................4

*Beveridge v. Vidunas (In re O'Reilly)*,
    598 B.R. 784 (Bankr. W.D. Pa. 2019) ...................................................................12

*In re Bibby Offshore Servs. PLC*,
    No. 17-13588 (MG) (Bankr. S.D.N.Y. Jan. 8, 2018) ............................................33

*In re Brierley*,
    145 B.R. 151 (Bankr. S.D.N.Y. 1992) ..............................................................26, 27

*Canada S. Ry. Co. v. Gebhard*,
    109 U.S. 527 (1883) ..........................................................................................28, 36

*In re Cenargo Int'l PLC*,
    294 B.R. 571 (Bankr. S.D.N.Y. 2003) ....................................................................5

*Clarkson v. Coughlin*,
    898 F. Supp. 1019 (S.D.N.Y. 1995) .......................................................................25

*In re Codere Fin. (U.K.) Ltd.*,
    No. 15-13017 (JLG) (Bankr. S.D.N.Y. Dec. 22, 2015) .........................................33

*In re Compania Mexicana de Aviacion, S.A. de C.V.*,
    Case No. 10-14182 (MG) (Bankr. S.D.N.Y. Nov. 8, 2010) ...................................14

*In re Condor Ltd.*,
    601 F.3d 319 (5th Cir. 2010) .................................................................................30

*Cornfeld v. Inv'rs Overseas Servs., Ltd.*,
    471 F. Supp. 1255 (S.D.N.Y. 1979) .......................................................................35

*In re Creative Fin., Ltd. (In Liquidation)*,
    543 B.R. 498 (Bankr. S.D.N.Y. 2016) ...................................................................12

*In re Culmer*,
    25 B.R. 621 (Bankr. S.D.N.Y. 1982) .....................................................................25

*Drawbridge Special Opps. Fund LP v. Barnet (In re Barnet)*,
    737 F.3d 238 (2d Cir. 2013) .....................................................................................4

*In re Garcia Avila*,
    296 B.R. 95 (Bankr. S.D.N.Y. 2003) .....................................................................26

*In re Gee*,
    53 B.R. 891 (Bankr. S.D.N.Y. 1985) .....................................................................32

*In re Ginsberg*,
    164 B.R. 870 (Bankr. S.D.N.Y. 1994) ...................................................................37

*In re Grant Forest Prods., Inc.,*
    440 B.R. 616 (Bankr. D. Del. 2010) ..................................................23

*Hilton v. Guyot*,
    159 U.S. 113 (1895) ..................................................29

*In re Ionica,*
    241 B.R. 829 (Bankr. S.D.N.Y. 1999) ..................................................20

*In re Ionosphere Clubs, Inc.*,
    922 F.2d 984 (2d Cir. 1990) ..................................................34, 35

*Jaffe v. Samsung Elecs. Co. Ltd.*,
    737 F.3d 14 (4th Cir. 2013) ..................................................17

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
    412 F.3d 418 (2d Cir. 2005) ..................................................35

*Re La Seda de Barcelona,*
    [2010] EWHC 1364 (Ch) ..................................................31

*In re Lecta Paper UK,*
    No. 19-13990 (Bankr. S.D.N.Y. Feb. 4, 2020) ..................................................33

*Re Lehman Bros Int'l (Europe),*
    [2009] EWCA Civ. 1161 ..................................................31

*Re Lehman Bros. Int'l (Europe) (In Administration),*
    [2018] EWHC 1980 (Ch) ..................................................31

*In re Lines,*
    81 B.R. 267 (Bankr. S.D.N.Y. 1988) ..................................................26

*In re Lupatech S.A.*,
    611 B.R. 496 (Bankr. S.D.N.Y. 2020) ..................................................37

*In re Markus,*
    610 B.R. 64 (Bankr S.D.N.Y. 2019) ..................................................17

*In re Metcalfe & Mansfield Alt. Invs.*,
    421 B.R. 685 (Bankr. S.D.N.Y. 2010) .................................................. *passim*

*In re Millennium Glob. Emerging Credit Master Fund Ltd.*,
    458 B.R. 63 (Bankr. S.D.N.Y. 2011), *aff'd* 474 B.R. 88 (S.D.N.Y. 2012) ..................12, 13

*In re MMG LLC,*
    256 B.R. 544 (Bankr. S.D.N.Y. 2000) ..................................................26

*Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*,
    714 F.3d 127 (2d Cir. 2013)....................................................9, 10

*Re Noble Grp. Ltd.*,
    [2018] EWHC 3092 (Ch) ............................................................31

*In re Nordic Aviation Cap. Designated Activity Co.*,
    No. 20-11410 (MEW) (Bankr. S.D.N.Y. July, 24, 2020)......................26

*In re Ocean Rig UDW Inc.*,
    570 B.R. 687 (Bankr. S.D.N.Y. 2017)............................................5

*In re Octaviar Admin. Pty Ltd.*,
    511 B.R. 361 (Bankr. S.D.N.Y. 2014)............................................5

*In re OIC Run-Off Ltd. & London & Overseas Ins. Co. Ltd.*,
    Case No. 15-13054 (SCC) (Bankr. S.D.N.Y. Jan. 11, 2016)..................9

*In re Olinda Star Ltd. (In Provisional Liquidation)*,
    614 B.R. 28 (Bankr. S.D.N.Y. 2020) ...........................................24

*In re Petition of Hourani*,
    180 B.R. 58 (Bankr. S.D.N.Y. 1995).............................................20

*In re Ran*,
    607 F.3d 1017 (5th Cir. 2010) ..................................................12

*In re Rede Energia S.A.*,
    515 B.R. 69 (Bankr. S.D.N.Y. 2014)........................................18, 27

*Riley v. Kingsley Underwriting Agencies, Ltd.*,
    969 F.2d 953 (10th Cir. 1992) ..................................................29

*RSM Richter Inc. v. Aguilar (In re Ephedra Prods. Liab. Litig.)*,
    349 B.R. 333 (S.D.N.Y. 2006)...................................................34

*In re Rubin*,
    160 B.R. 269 (Bankr. S.D.N.Y. 1993)..........................................26

*In re Serviços de Petróleo Constellation S.A.*,
    600 B.R. 237 (Bankr. S.D.N.Y. 2019)............................................9

*Shierson v. Vlieland-Boddy*,
    [2005] EWCA Civ. 974, [2005] W.L.R. 3966 (2005) .........................12

*In re Sino-Forest Corp.*,
    501 B.R. 655 (Bankr. S.D.N.Y. 2013)..................................27, 33, 34

*Society of Lloyd's v. Reinhart*,
  402 F.3d 982 (10th Cir. 2005) ............................................29

*In re SphinX, Ltd.*,
  351 B.R. 103 (Bankr. S.D.N.Y. 2006) ..........................10, 14

*In re Standing Order of Reference Re: Title 11*,
  12 Misc. 00032 (S.D.N.Y. Feb. 1, 2012) (Preska, C.J.) ..........3

*In re Suntech Power Holdings Co.*,
  520 B.R. 399 (Bankr. S.D.N.Y. 2014) ............................5

*In re Syncreon Auto. (UK) Ltd.*,
  Case No. 19-11702 (BLS) (Bankr. D. Del. Sept. 11, 2019) ......8

*In re Tokio Marine Eur. Ins. Ltd.*,
  No. 11-13420 (MG) (Bankr. S.D.N.Y. Sept. 8, 2011) ..........33

*In re Towergate Fin. Plc*,
  Case No. 15-10509 (SMB) (Bankr. S.D.N.Y. Mar. 27, 2015) ....9, 33

*In re Treco*,
  240 F.3d 148 (2d. Cir. 2001) ....................................20

*In re U.S. Steel Canada Inc.*,
  No. 17-11519 (MG) (Bankr. S.D.N.Y. June 29, 2017) ..........5

*Victrix S.S. Co. v. Salen Dry Cargo A.B.*,
  825 F.2d 709 (2d Cir. 1987) ....................................26

*In re Vitro S.A.B. de CV*,
  701 F.3d 1036 (5th Cir. 2012) ..................................34

*In re YH Ltd.*,
  Case No. 16-12262 (SCC) (Bankr. S.D.N.Y. Sept. 8, 2016) ....8, 33

**Statutes**

11 U.S.C. § 101(23) ................................................6, 7, 9

11 U.S.C. § 101(24) ................................................1, 6, 13, 14

11 U.S.C. § 103(a) ....................................................4

11 U.S.C. § 105(a) ....................................................3

11 U.S.C. § 109(a) ................................................4, 5, 16

11 U.S.C. § 350(a) ..................................................37

11 U.S.C § 1501....................................................................................3, 22, 34, 36

11 U.S.C. § 1502.................................................................................................*passim*

11 U.S.C. § 1504........................................................................................1, 14, 16

11 U.S.C. § 1507........................................................................................................3

11 U.S.C. § 1509................................................................................................3, 16

11 U.S.C. § 1515.....................................................................................1, 3, 16

11 U.S.C. § 1516................................................................................8, 10, 14

11 U.S.C. § 1517.............................................................................3, 11, 13

11 U.S.C. § 1520.........................................................................................................3

11 U.S.C. § 1521.........................................................................................3, 17, 25

11 U.S.C. § 1522(a)..............................................................................................17

28 U.S.C. § 157..........................................................................................................3

28 U.S.C. § 157(b)(2)(P)........................................................................................3

28 U.S.C. § 1334.......................................................................................................3

28 U.S.C. § 1410.......................................................................................................3

28 U.S.C. § 1410(1).................................................................................................5

**Other Authorities**

Fed R. Bankr. P. 1007(a)(4).......................................................................15, 16

Fed. R. Bankr. P. 5009(c) .........................................................................................37

Fed. R. Bankr. P. 9006(c)(1)...................................................................................38

H.R. Rep. 109-31(I), 109 Cong., Sess. 2005, *reprinted in* 2005 U.S.C.C.A.N. 88 ........................6

H.R. Rep. No. 109-31, pt. 1, 109 Cong. Sess. 2005, *reprinted in* 2005
    U.S.C.C.A.N. 88 (2005)...............................................................................21

Rule 5009-2(a) of the Local Rules for the United States Bankruptcy Court for the
    District of Delaware.....................................................................................37, 38

8 Richard Levin & Henry J. Sommer COLLIER ON BANKRUPTCY (16th ed. 2018)...................7, 17

Neil Gilchrist is the duly appointed foreign representative (the "**Foreign Representative**") of KCA Deutag UK Finance plc ("**KCAD**"), a public limited company incorporated under the laws of England and Wales that is the subject of a proceeding (the "**English Proceeding**") under Part 26 of the Companies Act 2006 (as amended or re-enacted from time to time, the "**Companies Act**") pending before the High Court of Justice of England and Wales (the "**English Court**").

The Foreign Representative commenced this chapter 15 case ancillary to the English Proceeding on October 15, 2020 (the "**Petition Date"**), by filing an Official Form B401 *Chapter 15 Petition for Recognition of a Foreign Proceeding* (the "**Form Petition**") and, in furtherance thereof, a *Verified Petition for Recognition of Foreign Proceeding and Motion for Ancillary Relief* (the "**Verified Petition**"[2] and, together with the Form Petition, the "**Chapter 15 Petition**"), with accompanying documentation, pursuant to sections 1504 and 1515 of title 11 of the United States Code (the "**Bankruptcy Code**"). By the Chapter 15 Petition, the Foreign Representative seeks the entry of an order substantially in the form annexed to the Verified Petition as Exhibit A (the "**Proposed Order**") and a final decree substantially in the form annexed to the Verified Petition as Exhibit B (the "**Proposed Final Decree**"): (i) recognizing the English Proceeding as the "foreign main proceeding" (as defined in section 1502(4) of the Bankruptcy Code) of KCAD; (ii) recognizing the Foreign Representative as the "foreign representative" (as defined in section 101(24) of the Bankruptcy Code) in respect of KCAD and the English Proceedings; (iii) subject to the English Court's entry of an order (the "**Sanction Order**") sanctioning KCAD's scheme of arrangement (the "**Scheme**"), recognizing, granting comity to, and giving full force and effect in the United States to the Sanction Order and the Scheme, including the Releases to be granted pursuant thereto; (iv) enjoining parties from taking any action that is inconsistent with the Sanction

---

[2]    Capitalized terms used but not defined herein have the meanings assigned to them in the Verified Petition.

Order and the Scheme; (v) immediately following recognition of the English Proceeding and enforcement of the Sanction Order and the Scheme by this Court, closing this chapter 15 case; and (vi) granting related relief.

The Foreign Representative respectfully files this Memorandum of Law in support of the Chapter 15 Petition.

## PRELIMINARY STATEMENT

KCAD, together with its indirect parent KCA Deutag Alpha II Limited ("**KCAD Alpha II**") and its direct and indirect subsidiaries (collectively, the "**Group**"), has negotiated an in-principle agreement with major stakeholders for a consensual financial restructuring to de-lever the Group's balance sheet and position it for sustainable long-term growth (the "**Restructuring**"). The Restructuring is essential to the Group's ability to reposition itself to not only survive the exigent threats posed by the COVID-19 global pandemic, but to thrive once the immediate global health crisis passes. A key component of the Restructuring is the Scheme, by which KCAD seeks authority to, *inter alia*, compromise the claims of creditors under the vast majority of the Group's existing funded indebtedness in return for the issuance of (a) $500,000,000 of new 9.875% senior secured New York-law governed notes and (b) ordinary shares representing 100% (subject to certain adjustments pursuant to the Management Equity Plan) of the issued share capital in a newly incorporated Jersey company, which upon the effective date of the Scheme will be the indirect 100% owner of the reorganized Group.

To ensure the efficient and effective administration of the English Proceeding and to implement the Restructuring pursuant to the terms of the Scheme, the English Proceeding needs to be recognized, and the Sanction Order and the Scheme need to be binding and enforceable, in the United States. Further, recognition of the English Proceeding and enforcement of the Sanction Order and Scheme are necessary so that KCAD's creditors and members are precluded from taking

any action in the United States that may frustrate the objectives of the Scheme and the Restructuring. Chapter 15 of the Bankruptcy Code is designed to protect and maximize the value of a foreign debtor's assets and to facilitate the rehabilitation of financially distressed businesses. As such, the Foreign Representative commenced this case to obtain recognition of the English Proceeding and the enforcement of the Sanction Order and the Scheme in the United States. Such relief will enable KCAD to achieve the objectives of the Scheme by (a) ensuring that the terms of the Scheme are binding, valid, and enforceable in the United States, (b) ensuring that parties subject to the Scheme are treated in the United States consistent with the terms of the Scheme, and (c) minimizing the risk of litigation in the United States that might disrupt the effective implementation of the Scheme.

For the reasons set forth below and in the Chapter 15 Petition and the documents filed in support of the Chapter 15 Petition, the relief sought by the Chapter 15 Petition should be granted.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, 11 U.S.C § 1501, and the *Amended Standing Order of Reference of the United States District Court for the Southern District of New York*, dated January 31, 2012, Reference M-431. *See In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P). Venue is proper in this District pursuant to 28 U.S.C. § 1410. The statutory predicates for the relief requested in the Chapter 15 Petition, as discussed herein, are sections 105(a), 1504, 1507, 1509, 1515, 1517, 1520, and 1521 of the Bankruptcy Code.

## BACKGROUND

1.      For a description of relevant English law, the Court is respectfully referred to the *Declaration of Ian Field as English Counsel in Support of Verified Petition for Recognition of*

*Foreign Proceeding and Motion for Ancillary Relief* dated October 15, 2020, and filed contemporaneously herewith (the "**Field Declaration**"). For a detailed description of KCAD's business, corporate organization, capital structure, the circumstances leading to the English Proceeding, the Scheme, and the Restructuring the Court is respectfully referred to: (i) the Chapter 15 Petition, the factual portions of which the Foreign Representative incorporates by reference herein as if fully set forth in this Memorandum of Law; and (ii) the *Explanatory Statement in Relation to a Scheme of Arrangement* (the "**Explanatory Statement**"). A copy of the Explanatory Statement is attached as Exhibit D to the Field Declaration and the Scheme is annexed to the Explanatory Statement as Appendix 2. Unpublished or foreign decisions and orders cited in this Memorandum of Law and the Chapter 15 Petition are annexed to the *Declaration of Daniel J. Guyder* dated October 15, 2020, which is being filed contemporaneously herewith (the "**Guyder Declaration**").

## ARGUMENT

### A.    KCAD Meets the General Eligibility Requirements of Section 109(a)

2.      Section 103(a) of the Bankruptcy Code provides that chapter 1, including section 109(a), applies in a case under chapter 15. 11 U.S.C. § 103(a). Section 109(a), in turn, provides that "only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under [the Bankruptcy Code]." 11 U.S.C. § 109(a). KCAD must therefore have a domicile, a place of business, or property in the United States to be eligible for relief under chapter 15. *See also Drawbridge Special Opps. Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238 (2d Cir. 2013).

3.      Section 109(a) of the Bankruptcy Code does not require a specific quantum of property in the United States, nor does it indicate when or for how long such property must have a U.S. situs. *See, e.g., In re Berau Cap. Res. Pte Ltd.*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015).

Courts have accordingly held that bank accounts, attorney retainers deposited in New York, or causes of action owned by the foreign debtor with a situs in New York satisfy the "property in the United States" eligibility requirement of section 109(a) of the Bankruptcy Code. *See e.g. In re Ocean Rig UDW Inc.*, 570 B.R. 687, 700 (Bankr. S.D.N.Y. 2017) (citing a retainer held by New York counsel in a New York account as a factor satisfying section 109(a) of the Bankruptcy Code and establishing venue); *In re U.S. Steel Canada Inc.*, No. 17-11519 (MG) (Bankr. S.D.N.Y. June 29, 2017) (granting recognition of a case where the foreign representative had cited the presence of a retainer in New York as the basis for venue); *see also In re Suntech Power Holdings Co.*, 520 B.R. 399, 416 (Bankr. S.D.N.Y. 2014) (holding that establishing a deposit account in New York "had the effect of establishing a basis for venue in [the Southern District of New York] under 28 U.S.C. § 1410(1)"); *In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 372–73 (Bankr. S.D.N.Y. 2014) ("There is a line of authority that supports the fact that prepetition deposits or retainers can supply 'property' sufficient to make a foreign debtor eligible to file in the United States.") (citing *In re Cenargo Int'l PLC*, 294 B.R. 571, 603 (Bankr. S.D.N.Y. 2003)).

4.      Here, KCAD satisfies the eligibility requirement of section 109(a). KCAD has property in the United States, including in this district. Specifically, KCAD has an interest in certain funds deposited with its U.S. counsel, Allen & Overy LLP, as a retainer for its services in connection with this chapter 15 case, which funds are held in a client trust account in New York, New York. Verified Petition ¶ 35.

5.      KCAD therefore meets the general eligibility requirements of section 109(a) of the Bankruptcy Code because it has property in the United States.

**B.      The English Proceeding is Entitled to Recognition as a Foreign Main Proceeding or, in the Alternative, as a Foreign Nonmain Proceeding**

6.      Section 1517(a) of the Bankruptcy Code provides, in pertinent part, that:

> [s]ubject to section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if—(1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a).

7.      An order recognizing the English Proceeding should therefore be entered if: (i) the English Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code; (ii) the English Proceeding is either a "foreign main proceeding" within the meaning of section 1502(4) or, a "foreign nonmain proceeding" within the meaning of section 1502(5); (iii) the Foreign Representative is a "foreign representative" within the meaning of section 101(24) and a "person" within the meaning of section 101(41); and (iv) the Chapter 15 Petition meets the requirements of section 1515. *See id.*; *see also* H.R. Rep. No. 109-31(I), 109 Cong., Sess. 2005, *reprinted in* 2005 U.S.C.C.A.N. 88, 169 at 175 (noting that the "decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings of the sort previously mandated by section 304(c) of the Bankruptcy Code). The requirements of this section, which incorporates the definitions in section 1502 and sections 101(23) and (24), are all that must be fulfilled to attain recognition"). As detailed below, because each of the foregoing requirements is satisfied, the Foreign Representative respectfully submits that the Court should enter an order granting recognition to the English Proceeding.

### *i.*      The English Proceeding is a "Foreign Proceeding"

8.      The English Proceeding is a "foreign proceeding" and, as such, satisfies the first condition for entry of an order recognizing such proceeding under Section 1517(a) of the Bankruptcy Code. Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in

> which proceeding the assets and affairs of the debtor are subject to control or
> supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). The Bankruptcy Code defines "foreign court" as "a judicial or other authority

competent to control or supervise a foreign proceeding." *See* 11 U.S.C. § 1502(3).

9.      As described in the Field Declaration, it is clear that the English Proceeding

qualifies as a "foreign proceeding" under Section 101(23) of the Bankruptcy Code. The English

Proceeding is pending in the United Kingdom. Part 26 of the Companies Act is a law "relating to

the adjustment of debt" because it allows a company to propose a scheme of arrangement to

effectuate binding compromises or arrangements, including the restructuring of its debts and

obligations, with all or select classes of its creditors or members. Field Decl. ¶ 6. The English

Proceeding is "collective" because, like a case under Bankruptcy Code, it affects and is for the

benefit of an entire class of KCAD's creditors, as opposed to a single party, and such creditors are

entitled to both vote on the Scheme and participate in hearings before the English Court in the

English Proceeding. *Id.* ¶ 17; 8 Richard Levin & Henry J. Sommer COLLIER ON BANKRUPTCY ¶

1501.03 (16th ed. 2018) ("The 'collective proceeding' requirement is intended to limit access to

chapter 15 to proceedings that benefit creditors generally and to exclude proceedings that are for

the benefit of a single creditor."). The English Proceeding is "judicial" because it is supervised by

the English Court, which has jurisdiction over proceedings with respect to companies registered

in England and Wales under the Companies Act and, like a bankruptcy court in a chapter 11 case,

plays an active role in the administration of the proceeding. Field Decl. ¶¶ 9-10, 15-16. The English

Court entered an order (the "**Convening Order**") authorizing meetings of affected parties to

consider approval of the Scheme (the "**Scheme Meetings**"). Verified Petition ¶ 50. A copy of the

Convening Order is attached as Exhibit B to the Field Declaration. The English Court's entry of

the Sanction Order—much like a plan confirmation order in a case under chapter 11 of the

Bankruptcy Code—will also be required for the Scheme to ultimately become valid and binding. Field Decl. ¶ 15. The English Court will only enter the Sanction Order after a hearing at which parties in interest will have an opportunity to be heard and, if they so choose, object to the requested relief, and if the English Court is satisfied that the sanction of the Scheme is consistent with the sound exercise of its discretion.[3] *Id*. ¶ 16. The English Court may sanction the Scheme unconditionally, may sanction the Scheme conditional upon certain modifications or amendments to the Scheme, or may refuse to sanction the Scheme. *Id.* Finally, section 1516(a) of the Bankruptcy Court entitles the Court to presume that the foreign proceeding is a "foreign proceeding," if the decision commencing the foreign proceeding so indicates. *See* 11 U.S.C. § 1516(a). Here the English Court has, in the Convening Order, declared that the Company's appointment of Mr. Gilchrist as the Foreign Representative was valid and that he is "authorised to act as [KACD]'s agent in seeking any relief available to a "foreign representative" under Chapter 15 of the U.S. Bankruptcy Code." Field Decl. Ex. B (Convening Order) ¶ 15.

10.    Further, courts in this District have consistently recognized proceedings regarding schemes of arrangement under Part 26 of the Companies Act as "foreign proceedings" for purposes of chapter 15 of the Bankruptcy Code. *See, e.g.*, *In re Syncreon Automotive (UK) Ltd.*, Case No. 19-11702-BLS (Bankr. D. Del. Sept. 11, 2019) [Dkt. No. 37]; *In re Avanti Commc'ns Grp. Plc*, 582 B.R. 603 (Bankr. S.D.N.Y. 2018); *In re YH Ltd.*, Case No. 16-12262-SCC (Bankr. S.D.N.Y.

---

[3]    As described in the Field Declaration, in considering whether to sanction a scheme of arrangement the English Court must consider whether: (i) the scheme, overall, is fair, taking into account the interests of the creditors and the nature of the scheme's impact upon dissenting creditors; (ii) the compromise or arrangement proposed in the scheme is one that an intelligent and honest person, a member of the class concerned and acting in respect of its interest, might reasonably approve; (iii) each class was fairly represented by those attending the relevant scheme meetings and whether the statutory majority are acting in good faith and are not coercing the minority in order to promote interests adverse to those of the class whom they purport to represent; (iv) the applicable statutory requirements are met; for example, whether the requisite majorities of voting scheme creditors have approved the scheme. The English Court is also entitled to give further consideration as to its jurisdiction to sanction the Scheme. Field Decl. ¶ 16.

Sept. 8, 2016) [Dkt. No. 14]; *In re OIC Run-Off Ltd. & London & Overseas Ins. Co. Ltd.*, Case No. 15-13054-SCC (Bankr. S.D.N.Y. Jan. 11, 2016) [Dkt. No. 18]; *In re Towergate Fin. Plc*, Case No. 15-10509-SMB (Bankr. S.D.N.Y. Mar. 27, 2015) [Dkt. No. 16]; *In re B. Endeavour Shipping Co. Ltd.*, Case No. 15-10246-REG (Bankr. S.D.N.Y. Mar. 10, 2015) [Dkt. No. 10].

11.     The English Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.

### ii.     *The English Proceeding is a Foreign Main Proceeding*

12.     Section 1502(4) of the Bankruptcy Code defines a "foreign main proceeding" as, a "foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). Similarly, section 1517(b)(1) of the Bankruptcy Code provides that a foreign proceeding shall be recognized "as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests." 11 U.S.C. §1517(b)(1).

13.     While the Bankruptcy Code does not define "center of its main interests" ("**COMI**"), in evaluating an entity's COMI the Second Circuit Court of Appeals has held that "the relevant principle . . . is that the COMI lies where the debtor conducts its regular business, so that the place is ascertainable by third parties . . . . Among other factors that may be considered are the location of headquarters, decision-makers, assets, creditors, and the law applicable to most disputes." *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 130 (2d Cir. 2013). When determining the "location of those who actually manage the debtor," courts consider more than the location of the board of directors of the debtor. *See In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 273 (Bankr. S.D.N.Y. 2019) (finding that the analysis of the location of management should be "flexible" and reflect the realities of a particular business). The factors relevant in assessing the COMI of a particular entity should not be applied "mechanically" and "[i]nstead, they should be viewed in light of chapter 15's emphasis on

protecting the reasonable interests of parties in interest pursuant to fair procedures and the maximization of the debtor's value." *In re SphinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006). The *SphinX* Court also observed that "because their money is ultimately at stake, one generally should defer . . . to the creditors' acquiescence in or support of a proposed COMI." *Id.*

14.     The relevant time period to consider in determining a debtor's COMI is "the date on which the chapter 15 petition was filed." *In re Fairfield Sentry Ltd.*, 714 F.3d at 135. The Bankruptcy Code presumes that a debtor's "registered office" is its COMI "[i]n the absence of evidence to the contrary." *See* 11 U.S.C. § 1516(c).

15.     England—a constituent member of the political union comprising the United Kingdom—is the COMI of KCAD. England is the jurisdiction of KCAD's registered office, which is located in Leeds. Accordingly, the Court may presume that KCAD's COMI is England pursuant to section 1516(c). Moreover, the evidence clearly supports the statutory presumption. KCAD's main center of business has been in England since before the commencement of the English Proceeding and remains there as of the filing of the Chapter 15 Petition and the fact that England is KCAD's COMI is readily ascertainable by creditors and other third parties.

16.     As an initial matter, as of the Petition Date substantially all KCAD's principal indebtedness, including *all* of the indebtedness affected by the Scheme, is governed by the laws of England and Wales and all disputes arising from or related thereto are subject to the jurisdiction of English courts. Verified Petition ¶ 15. Scheme Creditors holding approximately 96.86% in value of all Scheme Claims have acceded to the Lockup Agreement and have thus committed to support implementation of the Scheme through, *inter alia*, obtaining recognition of the English Proceedings in the US as a foreign main proceeding under chapter 15 of the Bankruptcy Code. *Id.* ¶ 48. While KCAD's three directors reside in Scotland, prior to the onset of the COVID-19

pandemic they travelled frequently to England to conduct business both directly and indirectly related to KCAD, including to engage with KCAD's and the broader Group's legal counsel, financial advisors, and other stakeholders in relation to the strategic review of the Group's balance sheet that led to the Restructuring. At all relevant times KCAD and the rest of the Group have been principally represented by solicitors, barristers, and financial advisors based in London who have engaged with the legal and financial advisors of KCAD's creditors and other stakeholders that are similarly based in London. In addition, KCAD: (i) uses an English address, phone number and fax number; (ii) maintains its books, records, and corporate documents at its registered address in Leeds; (iii) has funds on deposit in bank accounts located in England, including an account maintained by HSBC UK Bank plc; and (iv) is subject to UK corporation tax. *Id*. ¶ 13.

17.    The foregoing demonstrates that KCAD's center of main interests is located in England. The English Proceeding is therefore pending where KCAD has its center of main interests and constitutes a foreign main proceeding as defined in section 1502(4) of the Bankruptcy Code.

### iii.    *In the Alternative, the English Proceeding is a Foreign Nonmain Proceeding*

18.    As discussed above, the record clearly supports the statutory presumption that KCAD's COMI is in England. However, in the event the Court concludes that the English Proceeding is not a foreign main proceeding, the Foreign Representative submits that the English Proceeding should be recognized as a "foreign nonmain proceeding" within the meaning of section 1502(5) of the Bankruptcy Code.

19.    Section 1517(a) of the Bankruptcy Code provides that "an order recognizing a foreign proceeding shall be entered if (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or a foreign nonmain proceeding within the meaning of section 1502." 11 U.S.C. § 1517(a)(1). Section 1502(a)(5) of the Bankruptcy Code defines "foreign nonmain proceeding" as a foreign proceeding, other than a foreign main proceeding, pending in a country

where the debtor has an establishment. 11 U.S.C. § 1502(5). "Establishment" is defined in section 1502(2) of the Bankruptcy Code to mean "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(2). As with COMI, whether the debtor has an "establishment" in a country is determined at the time of filing the chapter 15 petition. *See Beveridge v. Vidunas (In re O'Reilly)*, 598 B.R. 784, 803 (Bankr. W.D. Pa. 2019) (finding that "the presumptive date from which [a c]ourt is to ascertain [a] debtor's center of main interests and/or establishment is the date the Chapter 15 petition was filed") (citing *Fairfield Sentry, Ltd.*, 714 F.3d at 134; *In re Ran*, 607 F.3d 1017, 1025 (5th Cir. 2010)).

20.     At least one court—noting the "paucity of U.S. authority" on what constitutes an "establishment"—has favorably cited a "persuasive" English law decision holding that the presence of an asset and minimal management or organization can suffice to create an establishment. *See In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 84-85 (Bankr. S.D.N.Y. 2011), *aff'd* 474 B.R. 88 (S.D.N.Y. 2012) ("**Millenium Glob.**") (*citing Shierson v. Vlieland-Boddy*, [2005] EWCA Civ. 974, [2005] W.L.R. 3966 (2005)). Several factors "contribute to identifying an establishment: the economic impact of the debtor's operations on the market, the maintenance of a 'minimum level of organization' for a period of time, and the objective appearance to creditors whether the debtor has a local presence." *Millennium Glob.*, 458 B.R. at 85. Showing of impact of the debtor's activities on the foreign jurisdiction involves a "showing of a local effect on the marketplace," evidenced by, among other things, engagement of "local counsel and commitment of capital to local banks." *See In re Creative Fin., Ltd. (In Liquidation)*, 543 B.R. 498, 520 (Bankr. S.D.N.Y. 2016); *Millennium Glob.*, 458 B.R. at 86-87.

21.     In this case, nontransitory economic activity is being carried out by KCAD as reflected by the evidence discussed above in support of the Foreign Representative's request that

this Court recognize the English Proceeding as a foreign main proceeding. This evidence includes, *inter alia*, that KCAD maintains an office in England, its principal decision makers travel frequently to England to conduct business on its behalf, its principal legal counsel and financial advisors (including all of those engaged in the extensive negotiations related to the Standstill Agreement, the Lockup Agreement, the Scheme, and the Restructuring) are all based in England, and it maintains funds on deposit with an English bank.

22.     Denying recognition of the English Proceedings as either foreign main or nonmain proceedings would leave KCAD without access to US courts, and as a result, KCAD would be unable to consummate a central aspect of the implementation of the Scheme and the Restructuring. Such a result would be at odds with the purpose of chapter 15 of the Bankruptcy Code—to engender cooperation among foreign courts with respect to restructuring and insolvency proceedings. *See Millennium Glob.*, 458 B.R. at 69, 81–82.

23.     The Foreign Representative submits that based on KCAD's numerous ties to England it clearly has an "establishment" in England as that term is defined in section 1502(5) of the Bankruptcy Code. A conclusion that KCAD has an establishment in England necessarily leads to a conclusion that the English Proceedings are, at a minimum, a foreign nonmain proceeding. *See* 11 U.S.C. §§ 1502(5), 1517(a)(1); 1517(b)(2).

### iv.     *This Case Was Commenced by KCAD's authorized "Foreign Representative"*

24.     To be recognized as a foreign proceeding under section 1517(a) of the Bankruptcy Code, the foreign representative applying for recognition must be:

> a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."

11 U.S.C. § 101(24).

25.     The Foreign Representative in this case is an individual who has been (1) duly appointed by formal resolution of KCAD's board of directors as foreign representative of the English Proceeding and (2) authorized by the English Court to act as "foreign representative" pursuant to the Convening Order. Chapter 15 Petition Ex. D (Board Resolution); Field Decl. Ex. B (Convening Order) ¶ 15.[4] Accordingly, Neil Gilchrist is a "foreign representative" as defined in the Bankruptcy Code. *See* 11 U.S.C. § 1516(a) ("If the decision [commencing the foreign proceeding] . . . indicates . . . that the person or body is a foreign representative, the court is entitled to so presume."); *In re SphinX, Ltd.*, 351 B.R. 103, 116-17 (Bankr. S.D.N.Y. 2006), *aff'd*, *Krys v. Official Comm. of Unsecured Creditors of Refco Inc.* (*In re SphinX, Ltd.*), 371 B.R. 10 (S.D.N.Y. 2007) (holding that section 101(24) of the Bankruptcy Code was satisfied where foreign representatives submitted a "copy of the Cayman Court's order appointing them to administer the [d]ebtors' winding up under [Cayman law] and authorizing their commencement of these chapter 15 cases . . .").

26.     The Foreign Representative is therefore a proper and duly appointed foreign representative within the meaning of section 101(24).

*v.     This Case Was Properly Commenced under Chapter 15 of the Bankruptcy Code*

27.     This chapter 15 case was duly and properly commenced as required by section 1504 of the Bankruptcy Code by filing a petition for recognition pursuant to section 1515(a) of the

---

[4]     *See Ad Hoc. Grp. of Noteholders v. Vitro, S.A.B. de C.V. (In re Vitro, S.A.B. de C.V.)*, 470 B.R. 408, 412 (N.D. Tex. 2012), *aff'd*, 701 F.3d 1031 (5th Cir. 2012), *cert. dismissed*, 569 U.S. 944 (2013) (recognizing that a board of directors may authorize a person to act as the company's foreign representative in a chapter 15 proceeding); *In re Compania Mexicana de Aviacion, S.A. de C.V.*, Case No. 10-14182 (MG) (Bankr. S.D.N.Y. Nov. 8, 2010) [Dkt. No. 261] (same). Section 1515(b) of the Bankruptcy Code specifically provides that in the absence of a "certified copy of the decision commencing such foreign proceeding and appointing the foreign representative" or "a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative," a chapter 15 petition may be accompanied by "any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative." 11 U.S.C. § 1515(b).

Bankruptcy Code. Pursuant to section 1515(b) of the Bankruptcy Code, a petition for recognition

must be accompanied by one of the following:

     i.    a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;

    ii.    certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or

   iii.    in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

28.     A copy of the Board Resolution authorizing commencement of this chapter 15 case

is attached to Verified Petition as Exhibit D. The Convening Order is a decision of the English

Court formally convening meetings of creditors and members for the purpose of voting on the

Scheme. Field Decl. ¶ 9; *Id*. Ex. B (Convening Order).

29.     The Chapter 15 Petition was filed accompanied by all fees, documents and

information required by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**"), including (i) a corporate ownership statement containing the

information required by Bankruptcy Rule 7007.1; (ii) a list containing (a) the names and addresses

of all persons or bodies authorized to administer foreign proceedings of the Debtor, and (b) all

entities against whom provisional relief is being sought under section 1519 of the Bankruptcy

Code; (iii) a statement identifying all foreign proceedings with respect to the Debtor that are known

to the Foreign Representative; and (iv) a certified copy of the Convening Order. *See List Filed*

*Pursuant to Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure* (filed

contemporaneously herewith).

30.     Having filed the above-referenced documents and because the Court is entitled to

presume the authenticity of such documents filed in connection with the petition for recognition

under section 1516(b) of the Bankruptcy Code, the requirements of section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4) have been met and this chapter 15 case was properly commenced. *See* 11 U.S.C. §§ 1504, 1509(a), 1515; Bankruptcy Rule 1007(a)(4).

31.    As demonstrated above, the English Proceeding is a foreign main proceeding or, in the alternative, a foreign nonmain proceeding under chapter 15 of the Bankruptcy Code because: (i) KCAD satisfies the general eligibility requirements to be a debtor under the Bankruptcy Code under Section 109(a) of the Bankruptcy Code; (ii) the English Proceeding is a foreign proceeding and a foreign main proceeding or, in the alternative, a foreign nonmain proceeding; (iii) the Chapter 15 Petition was filed by the Foreign Representative as the duly appointed foreign representative of KCAD; and (iv) the filing complies with all relevant requirements of Bankruptcy Code and the Bankruptcy Rules.

**C.    Recognition and Enforcement of the Sanction Order and the Scheme in the United States Pursuant to Section 1521 of the Bankruptcy Code Is Proper**

32.    In connection with recognition of the English Proceeding as a foreign main proceeding or, in the alternative, a foreign nonmain proceeding, the Foreign Representative seeks, subject to the English Court's entry of the Sanction Order sanctioning the Scheme, an order giving full force and effect to the Sanction Order and the Scheme, including the Releases to be provided in connection therewith, in the United States pursuant to Section 1521(a) of the Bankruptcy Code.

33.    Upon recognition of a foreign proceeding as either a foreign main proceeding or a foreign nonmain proceeding, section 1521(a) authorizes the Court to grant "any appropriate relief" at the request of the recognized foreign representative "where necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1521(a). Such discretionary relief may include, *inter alia*, "any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and

724(a) [of the Bankruptcy Code]." 11 U.S.C. § 1521(a)(7). The Court may grant relief under section 1521(a) if the interests of "the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a). The discretion granted to a court in considering a request to grant such "appropriate relief" in the circumstances of a given case is "exceptionally broad." *See In re Markus*, 610 B.R. 64, 84 (Bankr S.D.N.Y. 2019) (quoting *In re Atlas Shipping A/S,* 404 B.R. at 739-40).

34.    A determination of sufficient protection under section 1522(a) "requires a balancing of the respective parties' interests." *In re AJW Offshore, Ltd.*, 488 B.R. 551, 559 (Bankr. E.D.N.Y. 2013) (internal citations omitted); *Jaffe v. Samsung Elec. Co. Ltd.*, 737 F.3d 14, 27-28 (4th Cir. 2013) ("[T]he analysis required by § 1522(a) is therefore logically best done by balancing the respective interests based on the relative harms and benefits in light of the circumstances presented, thus inherently calling for application of a balancing test."); *see also* 8 Richard Levin & Henry J. Sommer Collier on Bankruptcy ¶ 1522.01 (16th ed. 2018) ("The purpose of [Section 1522] is to ensure a balance between the relief that may be granted to the foreign representative and the interest of the persons potentially affected by such relief."). In addition to engaging in this general balancing test, courts have also explained the concept of "sufficient protection" under section 1522(a) of the Bankruptcy Code as:

> embodying three basic principles: "[(i)] the just treatment of all holders of claims against the bankruptcy estate, [(ii)] the protection of U.S. claimants against prejudice and inconvenience in the processing of claims in the [foreign] proceeding, and [(iii)] the distribution of proceeds of the [foreign] estate substantially in accordance with the order prescribed by U.S. law."

*In re Atlas Shipping A/S*, 404 B.R. 726, 740 (Bankr. S.D.N.Y. 2009) (quoting *In re Artimm, S.r.L.*, 335 B.R. 149, 160 (Bankr. C.D. Cal. 2005)) (analyzing under § 304(c) of the old Code, but noting that the analysis would be "essentially the same" under § 1521(b)). As discussed below, both the

general balance test and specific factors identified in *Atlas Shipping* favor granting Foreign

Representative's requested relief.

### i.   *Just Treatment of All Holders of Claims Against or Interests in the Debtor's Property*

35.     The requirement to reasonably assure "just treatment of all holders of claims against

or interests in the debtor's property" is "generally satisfied upon a showing that the applicable law

'provides for a comprehensive procedure for the orderly and equitable distribution of [the debtor]'s

assets among all of its creditors.'" *See In re Rede Energia S.A.,* 515 B.R. 69, 95 (Bankr. S.D.N.Y.

2014) (discussing "just treatment" requirement for section 1507(b)(1) relief) (citing *In re Bd. of

Dirs. of Telecom Arg., S.A.*, 528 F.3d 162, 170 (2d Cir. 2008). "[I]nstances . . . [where] a foreign

proceeding does not satisfy this factor include where the proceeding fails to provide creditors

access to information and an opportunity to be heard in a meaningful manner." *Id.*

36.     Here, the English Proceeding clearly satisfies the "just treatment" requirement.

Implementation of the Scheme will result in the Scheme Creditors receiving the Scheme

Consideration, as described in greater detail in the Verified Petition and the Explanatory Statement.

Neither the Scheme nor the Restructuring, which will be implemented pursuant to authority

granted to KCAD under the Scheme,[5] restructure or amend debts and obligations owed to other

stakeholders of KCAD, including creditors of KCAD or the Group more broadly that are not

Scheme Creditors. Verified Petition ¶ 16. The Scheme will result in the same treatment for each

Scheme Creditor as other similarly situated Scheme Creditors. *Id.*

---

[5]     After the Scheme becomes effective, KCAD will enter into a "Restructuring Implementation Deed" on behalf of itself and each of the Scheme Creditors pursuant to the authority granted to it under the Scheme. A copy of the Restructuring Implementation Deed is annexed to the Explanatory Statement as Part 8 of Annex 4. The Restructuring Implementation Deed will, once executed and dated, oblige the parties thereto to enter into documents necessary to effect amendments to their existing agreements with the Group. The effectiveness of such amendments would be subject to the satisfaction of a number of conditions precedent.

37.     Further, in order to sanction the Scheme, KCAD must comply with all of the substantive and procedural requirements of Part 26, including the requirement that the Scheme is approved by each class of creditors by a simple majority in number representing at least 75% by value of the Scheme Creditors present and voting (in person or by proxy) at the relevant creditors' meeting. Field Decl. ¶ 12. The English Court cannot sanction the Scheme unless it is satisfied, among other things, that the Scheme is fair, taking into account the interests of creditors and the nature of the Scheme's impact upon dissenting creditors, and whether each class was fairly represented by those attending the relevant scheme meetings including that the statutory majority are acting in good faith and are not coercing the minority in order to promote interests adverse to those of the class whom they purport to represent. *Id.* ¶ 16. In addition, the English Court must also conclude that the classes of creditors voting on the Scheme have been properly formed (in general, the stakeholders within a class must be similarly situated, i.e., their interests are not so dissimilar as to make it impossible to consult with a view to their common interest). *Id.* ¶ 9. As such, the Scheme and Sanction Order, once entered, will be the result of a proceeding in which all Scheme Creditors were treated fairly, justly, and in full compliance with English law as determined by the English Court in the exercise of its discretion and after hearing and ruling on any objections from parties in interest.

38.     Proceedings under the Companies Act in connection with schemes under Part 26 are well-established and well-respected mechanisms to justly and fairly restructure all or certain of the obligations of cross-border enterprises such as KCAD, and the experience, integrity, and independence of the English Court is beyond reproach, as reflected by the uniform case body of case law in this District recognizing and enforcing schemes of arrangement under Part 26.

39.     Accordingly, the requirement of just treatment for holders of claims and interests in KCAD that are impacted by the Scheme is plainly satisfied.

### ii.     *Protection of Claim Holders in the United States Against Prejudice and Inconvenience in the Processing of Claims in the Foreign Proceeding*

40.     The Scheme addresses only the claims of the Scheme Creditors, all the Scheme Creditors will receive their *pro rata* entitlement to the Scheme Consideration, and there is no need for any Scheme Creditor to file a claim in the English Proceedings to receive the treatment afforded to them under the Scheme and the Restructuring. Verified Petition ¶¶ 16, 55. No creditor in the United States will be required to process a claim in English Proceeding and accordingly no creditor is inconvenienced thereby. *Id.* In any event, all Scheme Creditors have been or will be given adequate notice of the Scheme, the Scheme Meeting at which voting on the Scheme will be conducted, and the Sanction Hearing. *Id.* ¶ 51. The process for participating in or objecting to the Scheme is the same for creditors of KCAD located in the United States as it is for any other creditor, wherever located in the world. Field Decl. ¶ 22. To the extent participating in or objecting to the Scheme is analogous to filing a claim, this factor is satisfied. *C.f. In re Treco*, 240 F.3d 148, 158 (2d Cir. 2001) (finding, in section 304 case, no prejudice to US claimholders where insolvency proceeding in Bahamas was "fair, impartial, procedurally sound, and free from fraud"); *In re Petition of Hourani*, 180 B.R. 58, 68 (Bankr. S.D.N.Y. 1995) (holding, in section 304 case, that claim holders protected where they are given adequate notice of timing and procedures for filing claims, and such procedures do not create any additional burdens for a foreign creditor to file a claim).

### iii.     *Distribution of Proceeds Substantially in Accordance with the Bankruptcy Code*

41.     The third factor concerns whether distribution of a foreign debtor's property will substantially accord with the order of distribution provided by the Bankruptcy Code. The

"substantially in accordance" factor does not require that the foreign distribution be identical to United States bankruptcy law. *In re Ionica*, 241 B.R. 829, 836 (Bankr. S.D.N.Y. 1999) ("Section 304(c)(4) only requires that the foreign distribution scheme be 'substantially in accordance' with United States bankruptcy law; it does not have to mirror the United States distribution rules.") (citations omitted).[6]

42.     Here, as described in more detail in the Chapter 15 Petition and in the Explanatory Statement, pursuant to the terms of the Scheme, KCAD and other relevant parties will effect the release of all principal, accrued interest, and any other Liabilities in respect of the Scheme Claims and all of the Transaction Security and the Existing Notes will be cancelled. In exchange, the Scheme Creditors, all of which will be included in a single class for voting purposes, will receive, *inter alia*, the New Notes and the Jersey NewCo Shares Consideration, in each case on account of their *pro rata* holdings of the Scheme Claims. The Scheme does not contemplate any other class of creditors, and no other creditors are anticipated to receive the Scheme Consideration. The relief sought by KCAD through the English Court's sanction of the Scheme is thus substantially similar to relief available to debtors through confirmation of a plan of reorganization under Section 1129 of the Bankruptcy Code.

> ### iv.     *The General Balancing Test Weighs in Favor of Granting Relief*

43.     The Scheme is an appropriate mechanism to achieve the important goal of achieving an equitable and orderly restructuring of the contractual arrangements between the Scheme Creditors and KCAD. The requested relief, including enforcement of the Scheme and the

---

[6]     The "substantially in accordance" factor is a direct lift from former section 304 of the Bankruptcy Code, which chapter 15 replaced in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Congress has directed courts to use case law interpreting former section 304 in interpreting current chapter 15 issues so long as it is not inconsistent with the statute. *See* H.R. Rep. No. 109-31, pt. 1, at 119 (2005).

Releases, is necessary to effectively utilize this mechanism. Moreover, as noted above, the sanction

of the Scheme requires that a simple majority in number of the Scheme Creditors, representing at

least 75% in value of the aggregate Scheme Claims present and voting at the Scheme Meeting,

vote in favor of the Scheme. Scheme Creditors have a significant interest in receiving the benefits

of the Restructuring, of which the Scheme is an integral component, as reflected by the fact that

as at October 8, 2020, approximately 96.86% of all Scheme Creditors have entered into the Lock-

up Agreement. Verified Petition ¶ 48.

44.    In addition, KCAD must comply with all of the substantive and procedural

requirements of Part 26. Any objecting creditors whose objections are overruled by the English

Court will still receive the same treatment as other similarly situated creditors and will benefit

from the procedural protections available in the English Proceeding, so such creditors' interests

are protected consistent with English law and established norms of due process. Moreover, the

Existing Notes, the Credit Agreement (including the Term Loan Facility, the RCF, and the Existing

Overdraft Facility), the Guaranty Agreement, and the Existing Intercreditor Agreement are all

governed by English law, and KCAD has at all times been clearly identified in the relevant

agreements and instruments as a company incorporated under the laws of England and Wales. As

such, the Scheme Creditors would have reasonably expected that KCAD could become subject to

English Proceedings under the Companies Act and had ample notice of the possibility of such a

collective proceeding if KCAD encountered financial difficulties. Accordingly, balancing the

interests of the relevant parties strongly supports the conclusion that the relevant parties in interest

are sufficiently protected.

45.    Finally, the relief requested here clearly furthers the goals and purposes of chapter

15 itself. *See* 11 U.S.C. § 1501 (explaining that chapter 15's "objectives" include "cooperation

between (A) courts of the United States . . . and (B) the courts and other competent authorities of

foreign countries"). By ensuring that KCAD can effectuate the terms of the Scheme once approved

by the English Court, the relief requested "would assist in the efficient administration of this cross-

border insolvency proceeding, and it would not harm the interests of the debtors or their creditors."

*In re Grant Forest Prods.*, Inc., 440 B.R. 616, 621 (Bankr. D. Del. 2010).

46.     Accordingly, the Foreign Representative respectfully submits that enforcement of

the Sanction Order and the Scheme, including the Releases to be provided in connection therewith,

is necessary and appropriate.

**D.     Enforcement of the Scheme Is Also Proper under Section 1507**

47.     Apart from "appropriate relief" that may be granted pursuant to section 1521(a),

which the Foreign Representative submits provides this Court an independent sufficient statutory

basis to grant the discretionary relief requested in the Chapter 15 Petition, the Court may also act

under section 1507 of the Bankruptcy Code to provide "additional assistance" to a foreign

representative, provided that such assistance is "consistent with the principles of comity" and

cooperation with foreign courts. 11 U.S.C. § 1507; *see also Avanti*, 582 B.R. at 615; *Atlas

Shipping*, 404 B.R. at 737–38; *Bear Stearns*, 389 B.R at 325, 333.

48.     In exercising discretion to grant relief under section 1507(a) of the Bankruptcy

Code, courts are guided by the standards set forth in section 1507(b) of the Bankruptcy Code,

which provide that:

> In determining whether to provide additional assistance under this title or under
> other laws of the United States, the court shall consider whether such additional
> assistance, consistent with the principles of comity, will reasonably assure—
>
> 1)  just treatment of all holders of claims against or interests in the debtor's
>     property;
>
> 2)  protection of claim holders in the United States against prejudice and
>     inconvenience in the processing of claims in such foreign proceeding;

3) prevention of preferential or fraudulent dispositions of property of the debtor;

4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and

5) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

11 U.S.C. § 1507(b). Many of these same factors are also considered in connection with granting relief under section 1521 of the Bankruptcy Code.[7]

49.     Subsection 1507(b) is explicit that the principles of comity are key to a court's decision whether to grant additional assistance. *See, e.g., In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 696 (Bankr. S.D.N.Y. 2010) ("Section 1507 directs the court to consider comity in granting additional assistance to the foreign representative."); *In re Atlas Shipping*, 404 B.R. at 738 (noting that post-recognition relief is "largely discretionary and turns on subjective factors that embody principles of comity") (quoting *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333 (S.D.N.Y. 2008)). The general principles supporting granting comity in this case are discussed in Part F below. Beyond such general principles of comity, each of the listed considerations in subsection 1507(b) also favors discretionary relief.

50.     Considerations (1), (2), and (4) are essentially the same as the three factors in the *Atlas Shipping* test set forth above. Factor (5), provision of a "fresh start" does not apply here

---

[7]     Courts in this District and others have observed that "the interplay between the relief available under sections 1507 and 1521 is far from clear." *In re Avanti Commc'ns Grp. PLC*, 582 B.R. 603, 615–16 (Bankr. S.D.N.Y. 2018). In practice, relief is frequently available under both sections, and in either case "the principal question in determining whether to recognize and enforce" an order issued in a foreign proceeding "ultimately boils down to a question of the appropriateness of granting comity to the foreign court approval" of such order. *In re Agrokor d.d.*, 591 B.R. 163, 189 (Bankr. S.D.N.Y. 2018) (considering enforcement of Croatian restructuring plan and noting that "[a]s with section 1521, relief under section 1507 may include recognition and enforcement of a plan approved by a foreign court"). *See also In re Olinda Star Ltd.*, 614 B.R. 28 (Bankr. S.D.N.Y. 2020) (enforcing BVI scheme of arrangement under sections 1507 and 1521).

because KCAD is a business entity. *See In re Bd. of Dirs. of Telecom Arg.*, S.A., No. 05-17811 (BRL), 2006 WL 686867, at *23 n.11 (Bankr. S.D.N.Y. Feb. 24, 2006) (noting "fresh start" factor does not apply to business entities) (citing *In re Culmer*, 25 B.R. 621, 631 n.4 (Bankr. S.D.N.Y. 1982)).

51.     The only remaining factor to be considered is therefore factor (3), "prevention of preferential or fraudulent dispositions of property of the debtor," which is satisfied here. Implementation of the Restructuring, pursuant to the authority to be granted to KCAD under the Scheme, will only occur after the Sanction Order is entered and delivered to the Registrar of Companies of England and Wales, which requires a determination by the English Court that the compromises and transactions contemplated by the Scheme are in accordance with English law. Adherence to the scheme of arrangement procedures under Part 26 of the Companies Act and the supervision of the English Court is a sufficient safeguard to reasonably assure prevention of preferential or fraudulent dispositions of property of the debtor.

52.     Accordingly, the standards set forth in section 1507(b) all weigh in favor of granting enforcement of the Sanction Order and Scheme, including the Releases to be provided pursuant to the Deed of Release pursuant to the authority granted to KCAD under the Scheme.

**E.      Injunctive Relief is Appropriate**

53.     In addition to recognition of the Sanction Order and the Scheme, by the Chapter 15 Petition the Foreign Representative also seeks additional discretionary relief pursuant to sections 1521 and 1507 of the Bankruptcy Code through the issuance of a permanent injunction against acts that would interfere with the Sanction Order and the Scheme, including the Releases. To the extent the standards for injunctive relief apply in this chapter 15 case to the relief requested, those standards are met. *See* 11 U.S.C. § 1521(e). To obtain an injunction, a movant must demonstrate

that (i) an injunction is required to avoid irreparable harm and (2) there is a likelihood of success on the merits. *See Clarkson v. Coughlin*, 898 F. Supp. 1019, 1035 (S.D.N.Y. 1995).

54.     With respect to the second factor, the Foreign Representative seeks injunctive relief enforcing the Sanction Order, the Scheme, and the Releases to be provided pursuant to the authority granted thereby in the United States only upon recognition thereof as part of the Proposed Order. Therefore, at the time such discretionary relief is granted, the requirement that the movant succeeds on the merits will be satisfied.

55.     With respect to the first factor, irreparable harm to an estate exists where the "equitable and orderly distribution of a debtor's property" are disrupted. *Victrix*, 825 F.2d at 713-14. *See also In re Garcia Avila*, 296 B.R. 95, 114 (Bankr. S.D.N.Y. 2003) ("irreparable harm is present when the failure to enjoin local actions will disrupt the orderly reconciliation of claims and the fair distribution of assets in a single, centralized forum" (quoting 2 Collier on Bankruptcy ¶ 304.05, at 304-21 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. Rev. 2003)); *In re MMG LLC*, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) ("[I]rreparable harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of the other creditors."); *In re Rubin*, 160 B.R. 269, 283 (Bankr. S.D.N.Y. 1993) ("[T]here appears to be little dispute regarding the notion that the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury," quoting *In re Lines*, *infra*); *In re Brierley*, 145 B.R. 151, 168 (Bankr. S.D.N.Y. 1992) ("Harm to the estate exists from the failure to grant injunctive relief in the form of disruption of an orderly determination of claims and the fair distribution of assets in a single case.") (internal quotation marks and citation omitted); *In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988) ("[T]he premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury.").

56.     Courts in this District have thus repeatedly recognized their authority to grant injunctive relief to enforce foreign plans and discharges. *See*, *e.g.*, *In re Nordic Aviation Cap. Designated Activity Co.*, No. 20-11410 (Bankr. S.D.N.Y. July, 24, 2020) [Dkt. No. 29] (granting permanent injunctive relief to enforce an Irish scheme of arrangement and releases provided thereunder); *In re Bd. of Dirs. of Hopewell Int'l Ins., Ltd. (Digicel Grp. One)*, No. 20-11207 (Bankr. S.D.N.Y. June, 17, 2020) [Dkt. No. 29] (same in respect of Bermuda scheme); *In re Rede Energia S.A.*, 515 B.R. 69, 93 (Bankr. S.D.N.Y. 2014) ("The request by the Foreign Representative that the Court . . . enjoin acts in the U.S. in contravention of the [foreign confirmation decision] is relief of a type that courts have previously granted under section 304 of the Bankruptcy Code and other applicable law.") (cit*ing In re Bd. of Dirs. of Telecom Arg., S.A.*, 528 F.3d at 174–76); *In re Sino-Forest Corp.*, 501 B.R. 655 (Bankr. S.D.N.Y. 2013) (granting permanent injunctive relief to enforce Canadian plan); *In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685 (Bankr. S.D.N.Y. 2010) (same). *In re Bd. of Dirs. of Hopewell Int'l Ins., Ltd.*, 238 B.R. 25 (Bankr. S.D.N.Y. 1999) (extending injunction of Bermuda court to prohibit any creditor from commencing or continuing actions in the United States contrary to the Bermudan plan pursuant to former section 304 of the Bankruptcy Code); *Brierley*, 145 B.R. at 168-69 (granting permanent injunction prohibiting suits against the foreign debtor, its property or its administrators arising out of claims which could have been asserted prior to the filing of the ancillary petition);

57.     As discussed above in the context of demonstrating that enforcement of the Sanction Order, the Scheme and the Releases is appropriate, an injunction enforcing the terms of the Sanction Order, the Scheme, and the Releases in the United States is necessary to prevent the Scheme Creditors from seeking to obtain judgments in the United States against KCAD and the other Released Parties to obtain greater recoveries than those to which they are entitled under the

Scheme and the Restructuring. Allowing creditors to relitigate issues resolved pursuant to the Sanction Order and the Scheme in the United States would threaten the success of the Scheme and cause "irreparable harm" to the Debtor.

58.     The granting of the requested relief, conversely, would protect the interests of the Scheme Creditors by promoting the rescheduling of the Debtor's financial obligations to preserve its going concern status and ensuring that creditors are treated on a consistent, nondiscriminatory basis in accordance with the terms of the Sanction Order and the Scheme.

**F.     Enforcement of the Sanction Order and the Scheme is Consistent with Principles of Comity**

59.     Regardless of whether the discretionary relief requested in the Chapter 15 Petition is considered under sections 1521 or 1507, the key determination on whether to recognize and enforce the Sanction Order and the Scheme generally "boils down to a question of the appropriateness of granting comity." *See In re Agrokor d.d.*, 591 B.R. 163, 189 (Bankr. S.D.N.Y. 2018); *see also Avanti*, 582 B.R. at 616 (reasoning that the decision of whether to grant appropriate relief or assistance by enforcing a scheme and sanction order under either section 1507 or 1521 is "guided by principles of comity and cooperation with foreign courts.").

60.     The need to extend comity to foreign proceedings is particularly salient with respect to proceedings such as the English Proceeding, which will determine how the claims of the Scheme Creditors will be dealt with in a single collective proceeding, because "[t]he equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding" to bind all creditors and comprehensively effectuate a plan of reorganization. *Atlas Shipping*, 404 B.R. at 737 (quoting *Victrix S.S. Co. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713–14 (2d Cir. 1987)); *see also Canada S. Ry. Co. v. Gebhard*, 109 U.S. 527, 539 (1883) ("Unless all parties . . . can be bound by the arrangement . . . the scheme may fail . . . . Under these

circumstances, the true spirit of international comity requires that schemes of this character, legalized at home, should be recognized . . . .").

61.     Notions of fairness and due process are central to any comity analysis. In this regard, the Supreme Court has held that a foreign judgment should not be challenged in the United States if the foreign forum provides:

> a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting . . . .

*Hilton v. Guyot*, 159 U.S. 113, 202–03 (1895). Courts therefore find that where a foreign proceeding affords parties a full and fair opportunity to be heard on the relief requested therein, granting comity to the orders arising out of such foreign proceedings is appropriate. *See Avanti*, 582 B.R. at 618–619 (holding that "proceedings under UK law in the UK Courts afford creditors a full and fair opportunity to be heard in a manner consistent with US due process standards" and extending comity to a sanctioned scheme that complied with applicable statutory requirements; fairly represented creditors in classification; found the majority acted in a *bona fide* manner; was one that an intelligent and honest person, acting in respect of his or her interests as a creditor, might reasonably approve; and where jurisdiction was proper); *see also Society of Lloyd's v. Reinhart*, 402 F.3d 982, 994 (10th Cir. 2005) ("[O]ur courts have long recognized that the courts of England are fair and neutral forums") (quoting *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 958 (10th Cir. 1992)).

62.     Put simply, "[a]s long as the manner in which the scheme acquired statutory effect comports with our notions of procedural fairness, comity should be extended to it." *Hopewell*, 238 B.R. at 56-61. Under this standard, the mere fact that a foreign representative requests relief that

would not be available in the United States is not grounds for denying comity under section 1506.
*See*, *e.g.*, *In re Condor Ltd.*, 601 F.3d 319, 327 (5th Cir. 2010); *see also Telecom Argentina*, 528
F.3d at 173 (stating that comity "does not require that foreign proceedings afford a creditor
identical protections as under U.S. bankruptcy law"); *In re Metcalfe & Mansfield Alt. Invs.*, 421
B.R. 685, 697 (Bankr. S.D.N.Y. 2010) ("The relief granted in the foreign proceeding and the relief
available in a U.S. proceeding need not be identical.").

63.     The English Proceeding easily meets the standard for extending comity. The United
States and the United Kingdom share the same common law traditions and fundamental principles
of law. Moreover, in the English Proceeding the Scheme Creditors have a full and fair opportunity
to vote on and be heard in connection with the Scheme in a manner consistent with US standards
of due process. As discussed in detail above and in the Field Declaration, in order for the Scheme
to be sanctioned by the English Court, KCAD must satisfy all of the procedural and substantive
requirements of the scheme of arrangement process under Part 26, and all Scheme Creditors will
have an opportunity to challenge, at the Sanction Hearing, the proposed compromises and
arrangements provided for in the Scheme and the process and procedures in respect of the Scheme.
The foregoing is consistent in all material respects with the rights and process in relation to the
confirmation of chapter 11 plans under the Bankruptcy Code. Accordingly, enforcing the Sanction
Order and the Scheme as appropriate relief or additional assistance under section 1521 or 1507 is
an appropriate exercise of comity.

64.     In this case, much of the relief requested in the English Proceeding would also be
available under a chapter 11 plan of reorganization. The terms of the Scheme, however, do provide
KCAD with the authority to cause the grant of certain releases of the Scheme Creditors' claims
that may exist against third parties. Although such releases are not routinely granted in chapter 11

cases, they are commonplace in English schemes of arrangement, and English courts have well-developed laws and practices to assess such releases. See Field Decl. ¶¶ 18-19; *see also*, *e.g.*, *Re Lehman Bros Int'l (Europe), [2009] EWCA Civ. 1161*; *Re La Seda de Barcelona*, [2010] EWHC 1364 (Ch); *Re Lehman Brothers Int'l (Europe) (In Administration) [2018] EWHC 1980 (Ch); Re Noble Group Ltd [2018] EWHC 3092 (Ch).*

65.    English law provides strong grounds for the English Court to sanction the Releases. The grant of the Releases are an essential component of the Restructuring and required for its implementation. With respect to the release of the claims (if any) of the Scheme Creditors against the other Obligors, by virtue of the Contribution Deed, the other Obligors would have direct claims of contribution against KCAD equal to any amounts paid to the Scheme Creditors on account of obligations under the Existing Financings. Similarly, the Guarantors have rights of contribution against KCAD pursuant to the Guaranty Agreement. Verified Petition ¶ 47. As such, failure by the Scheme Creditors to provide the Releases to the Credit Agreement Borrowers and the Guarantors would render the Scheme futile. *Id*. ¶ 47, 60. The Releases provided for the benefit of the Existing Shareholders and Relevant Directors are similarly essential to the success of the Scheme as they serve as a key element of the consideration for the Existing Shareholder's agreement to consent to KCA Deutag Alpha II's transfer of 100% of the shares of Alpha to English Newco 2 in order to accomplish the contemplated equitization of the Scheme Claims that is a central feature of the Restructuring. *Id.* ¶ 60.

66.    As set forth in detail above, the English Proceeding accords with fundamental US standards of due process. As with the other features of the Scheme, the "key determination" in whether to grant comity to the Releases is whether the procedures used in the foreign jurisdiction meet U.S. "fundamental standards of fairness." *Metcalfe*, 421 B.R. at 697. In *Metcalfe*, the foreign

representative sought recognition of a plan that included "a very broad third-party release," which the Canadian court had approved. In evaluating whether to enforce the Canadian court order approving the plan, the *Metcalfe* court observed that because the Court was not being asked to approve releases in a plenary case, the correct inquiry was not whether the Canadian plan could have been approved in a chapter 11 case, but rather "whether the foreign orders should be enforced in the United States." *Id.* at 696. To answer that question, the court primarily considered principles of comity including: whether the foreign proceeding provided "a full and fair opportunity [for creditors] to be heard in a manner consistent with standards of U.S. due process;" (*Id.* at 698); whether the plan was approved by the debtor's creditors and the foreign court (*Id.*); and whether enforcement of the orders would be manifestly contrary to U.S. public policy under section 1506 of the Bankruptcy Code (*Id.*); *see also Agrokor d.d.*, 591 B.R. at 189; *In re Gee*, 53 B.R. 891, 902, 904 (Bankr. S.D.N.Y. 1985) (stating that "[f]or comity to be extended, it is necessary only that the foreign court abide by fundamental standards of procedural fairness" and noting that the ancillary court, if satisfied with the procedural fairness of the foreign proceeding, "should not sit as an appellate court over the foreign proceedings"). Reasoning that the public policy exception is narrow and that the Canadian proceeding provided "a full and fair trial abroad" the court concluded that comity should be afforded. *Metcalfe*, 421 B.R. at 700.

67.     This case is no different. The English Proceeding conforms to American notions of due process, which are themselves rooted in the common law traditions of England. *See In re Bd. of Dirs. Of Hopewell Int'l Ins., Ltd.*, 238 B.R. 25 (Bankr. S.D.N.Y. 1999) ("[W]hen the foreign proceeding is in a sister common law jurisdiction with procedures akin to our own, comity should be extended with less hesitation[.]"). Accordingly, this Court and others have not hesitated to enforce third-party releases similar to the Releases, including in connection with English law

schemes of arrangement under Part 26 of the Companies Act. *See*, *e.g.*, *In re Lecta Paper UK*, No. 19-13990 (Bankr. S.D.N.Y., Feb. 4, 2020) (recognizing and enforcing English scheme or arrangement releasing, among others, non-debtor managers, directors, and officers); *In re New Look Secured Issuer plc*, No. 19-11005-SMB (Bankr. S.D.N.Y. May 3, 2019) (recognizing and enforcing English scheme releasing, among others, current and former directors that execute a deed of release, shareholder of "TopCo" and certain other equity holders); *In re Bibby Offshore Servs. PLC*, No. 17-13588-MG (Bankr. S.D.N.Y. Jan.8, 2018) (English law scheme releasing, among others, directors and officers); *In re YH Ltd.*, No. 16-12262- SCC (Bankr. S.D.N.Y. Sep. 8, 2016) (release of non-debtor guarantors of financial indebtedness of the foreign debtor); *In re Towergate Finance plc.*, No. 15-10509 (Bankr. S.D.N.Y. Mar. 27, 2015) (release of directors and officers that execute a deed of release); *In re Codere Fin. (U.K.) Ltd.*, No. 15-13017-JLG (Bankr. S.D.N.Y. Dec. 22, 2015) (English scheme releasing affiliated non-debtor guarantors and co-issuers); *In re Sino-Forest Corp.*, 501 B.R. 655, 664 (Bankr. S.D.N.Y. 2013) (enforcing foreign order containing third-party releases); *In re Tokio Marine Eur. Ins. Ltd.*, No. 11-13420-MG (Bankr. S.D.N.Y. Sept. 8, 2011) (release of past and present directors); *see also In re Arctic Glacier Int'l, Inc.*, 901 F.3d 162, 167-68 (3d Cir. 2018) (affirming bankruptcy court order enforcing releases in foreign debtor's Canadian plan of arrangement).

68.     Thus, principles of comity and relevant case authority clearly support enforcement of the Sanction Order, the Scheme, and the Releases to be provided pursuant to the authority granted to KCAD under the Sanction Order and the Scheme, whether or not the same relief could be ordered in a plenary chapter 11 case.

G.      **The Relief Requested by the Chapter 15 Petition Is Consistent with United States Public Policy and Policy Behind the Bankruptcy Code**

69.      The purpose of chapter 15 is set forth in section 1501 of the Bankruptcy Code and includes:

> (1) cooperation between (A) courts of the United States, the United States trustees, trustees, examiners, debtors, and debtors in possession; and (B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases; (2) greater legal certainty for trade and investment; (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor; (4) protection and maximization of the value of the debtor's assets; and (5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501. Recognition of the English Proceeding as a foreign main proceeding, or, in the alternative as a foreign nonmain proceeding, and recognition and enforcement of the Sanction Order and the Scheme in the United States comports with all of these objectives.

70.      While section 1506 of the Bankruptcy Code provides that nothing in chapter 15 shall prevent the Court from refusing to take an action otherwise required therein if such action would be manifestly contrary to the public policy of the United States, the public policy exception is narrowly construed. *See*, *e.g.*, *RSM Richter Inc. v. Aguilar (In re Ephedra Prods. Liab. Litig.)*, 349 B.R. 333, 336 (S.D.N.Y. 2006); *In re Sino-Forest*, 501 B.R. 655, 665 (S.D.N.Y. 2013); *Metcalfe*, 421 B.R. at 697; *In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1069 (5th Cir. 2012). Moreover, the public policy exception must be viewed in light of one of the fundamental goals of the Bankruptcy Code—the centralization of disputes involving the debtor. *See*, *e.g.*, *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990) ("The Bankruptcy Code provides for centralized jurisdiction and administration of the debtor, its estate and its reorganization in the Bankruptcy Court . . . .") (internal citations and quotation marks omitted). Indeed, as some courts have noted:

> American courts have long recognized the need to extend comity to foreign
> bankruptcy proceedings because the equitable and orderly distribution of a debtor's
> property requires assembling all claims against the limited assets in a single
> proceeding; if all creditors could not be bound, a plan of reorganization would fail.

*Atlas Shipping*, 404 B.R. at 733 (internal quotation marks omitted) (citing *Victrix*, 825 F.2d at 713-

14); *see also JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 424

(2d Cir. 2005) ("We have repeatedly held that U.S. courts should ordinarily decline to adjudicate

creditor claims that are the subject of a foreign bankruptcy proceeding.").

71.     Recognition of the English Proceeding as a foreign main proceeding or, in the

alternative, as a foreign nonmain proceeding, and recognition and enforcement of the Sanction

Order and Scheme will enable the Group to fully implement the Restructuring and enable KCAD's

and the Group's business to continue going forward.

72.     Recognition and enforcement would also promote the fair and efficient

administration of a cross-border reorganization procedure that protects the interests of all

stakeholders and interested parties. By recognizing the English Proceeding and granting the other

relief requested in the Chapter 15 Petition, the process of administering KCAD's debts and

obligations to the Scheme Creditors would be centralized in England, which is a fundamental goal

of the Bankruptcy Code. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 922 F.2d at 989; *Cornfeld v.

Investors Overseas Servs., Ltd.,* 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979) (noting that "the firm

policy of American courts is the staying of actions against a corporation which is the subject of a

bankruptcy proceeding in another jurisdiction"). Such debts and obligations would be restructured

under the Scheme that comports with English law, which is similar to comparable United States

laws, and any disputes would be subject to the uniform jurisdiction of one tribunal—the English

Court. Recognition and enforcement will enable the orderly administration of KCAD's

restructuring and foster cooperation between courts in England and the United States. Such orderly

administration is demonstrably consistent with the public policy of the United States and the Bankruptcy Code. If the Scheme sanctioned by the English Court is not recognized and enforced in the United States, the uniform and orderly process of the English Proceeding would be jeopardized. *See, e.g., Canada S.Ry. Co. v. Gebhard*, 109 U.S. 527, 539 (1883) ("[u]nless all parties in interest, wherever they reside, can be bound by the arrangement which is sought to have legalized, the scheme may fail. All home creditors can be bound. What is needed is to bind those who are abroad. Under these circumstances the true spirit of international comity requires that schemes of this character, legalized at home, should be recognized in other countries.").

73.     Further, if the Court does not recognize and enforce the Sanction Order, the Scheme, and the Releases to be provided in connection therewith, then the English Proceeding will face grave legal uncertainty and the Scheme, and therefore the Restructuring, is unlikely to succeed. Additionally, failure to enjoin the Scheme Creditors or enforce the Releases in the United States may result in unnecessary enforcement costs or the piecemeal disposition of assets to the detriment of KCAD and its various stakeholders. The purpose of chapter 15 is to prevent such harms. *See* 11 U.S.C. § 1501(a) (noting that, among other objectives described herein, chapter 15 facilitates "the rescue of financially troubled business" and provides for the "fair and efficient administration of cross-border insolvencies").

74.     Avoiding such potential adverse outcomes through the formal recognition of the English Proceeding and recognition and enforcement of Sanction Order, the Scheme, and the Releases in the United States accomplishes the principal objectives Congress articulated when it enacted chapter 15 of the Bankruptcy Code and otherwise comports with US public policy.

**H.     This Court Should Immediately Close the Chapter 15 Case Following Its Entry of an
Order Granting Recognition of the English Proceeding and Enforcing the Sanction
Order and Scheme in the United States**

75.     Section 1517(d) of the Bankruptcy Code provides that "[a] case under [Chapter 15]
may be closed in the manner prescribed under section 350." 11 U.S.C § 1517(d). Pursuant to
section 350 of the Bankruptcy Code, a bankruptcy case may be closed "[a]fter an estate is fully
administered." 11 U.S.C. § 350(a). "The purpose of section 350 is to expedite disposition of the
case and ensure fair treatment of all interested parties." *In re Lupatech S.A.*, 611 B.R. 496, 503
(Bankr. S.D.N.Y. 2020) (closing chapter 15 case pursuant to order granting full force and effect to
foreign court orders) (citations omitted). As an "estate" is not created in a chapter 15 case, "fully
administered" in the chapter 15 context means, at a minimum, that administrative claims have been
provided for, and there are no outstanding motions, contested matters or adversary proceedings.
*Id*. (citations omitted). Fed. R. Bankr. P. 5009(c) provides that a foreign representative shall "file
a final report when the purpose of the representative's appearance in the court is completed. The
report shall describe the nature and results of the representative's activities in the court." Fed. R.
Bankr. P. 5009(c). If there is no objection by the United States trustee or a party in interest within
30 days, the estate is presumed to have been fully administered and may be closed. *See* Rule
5009(c); Rule 5009-2(a) of the Local Rules for the United States Bankruptcy Court for the District
of Delaware (the "**Local Rules**"); *In re Ginsberg*, 164 B.R. 870, 873 (Bankr. S.D.N.Y. 1994).
"The intended meaning of section 1517(d) of the Bankruptcy Code and Bankruptcy Rule 5009(c)
is clear: once the need for a chapter 15 case no longer exists and the purpose of the representative's
appearance in the U.S. court is completed, the case may be closed." *In re Lupatech S.A.*, 611 B.R.
at 503.

76.     In accordance with Bankruptcy Rule 5009(c), the Final Report set out in the
Chapter 15 Petition describes the Foreign Representative's limited activities this case, and the

Foreign Representative respectfully submits that once the Proposed Order has been entered, the relief and protections afforded by chapter 15 will have been fully realized and this proceeding will have served its purpose. Verified Petition ¶¶ 65, 77-78. The Foreign Representative does not anticipate that there will be any other outstanding motions, objections (including to the Final Report), contested matters or adversary proceedings pending before this Court at the time the relief requested in the Chapter 15 Petition is heard. In these circumstances, prompt closure of this case will reduce costs and relieve the burden on this Court. Accordingly, the Foreign Representative respectfully requests that the Court (i) reduce the applicable 30-day notice period set forth in Bankruptcy Rule 5009(c) and Rule 5009-2(a) of the Local Rules in order to permit the Court to hear the Foreign Representative's request to close the case at the Recognition Hearing, thereby limiting costs and relieving the burden on this Court,[8] and (ii) close the chapter 15 case immediately following entry of the Proposed Order, pursuant to the proposed form of Final Decree attached to the Verified Petition as Exhibit B.

*[Intentionally left blank]*

---

[8]     *See* Fed R. Bankr. P 9006(c)(1) (allowing Bankruptcy Court to reduce notice periods for cause).

## **CONCLUSION**

WHEREFORE, the Foreign Representative respectfully requests that this Court grant the relief requested in the Chapter 15 Petition and such other and further relief as may be just and proper.

Dated: New York, New York
      October 15, 2020

**ALLEN & OVERY LLP**

By: /s/ Daniel J. Guyder
Daniel J. Guyder
Joseph Badtke-Berkow
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399
daniel.guyder@allenovery.com
joseph.badtke-berkow@allenovery.com

*Counsel to Neil Gilchrist, as the Foreign Representative of KCA Deutag UK Finance plc*